IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| William C. McKinnedy, III, ) | |
| ) | Civil Action No. 6:10-2298-HMH-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Ms. Brenda Kee-Lippe, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 90). The plaintiff, a state prisoner proceeding *pro se*, has brought suit alleging a myriad of claims against over 30 South Carolina Department of Corrections ("SCDC") staff members and state government officials.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

On March 28, 2011, the defendants filed a motion for summary judgment. By order filed March 29, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on May 4, 2011. The defendants filed a reply on May 10, 2011.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Grievances***

The plaintiff alleges in his complaint that the defendants failed to handle his many grievances properly. The defendants address this allegation at length in their motion for summary judgment and have submitted several affidavits supporting their position that

all of plaintiff's grievances were handled appropriately (*see* def. m.s.j. at 6-15; *see also* Hardin, Hough, Reynolds, Coleman, Ward affs.). Furthermore, even if the defendants failed to handle the grievances properly, the plaintiff still fails to state a claim pursuant to Section 1983. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Even assuming that the defendants violated their own grievance procedures, such actions do not state a claim that is actionable under Section 1983. *See Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D. Va.1994). Accordingly, this claim fails.

### *Disciplinary Hearing Tape*

On September 4, 2008, the plaintiff was convicted of Exhibitionism and Public Masturbation. The plaintiff alleges that he requested to listen to the tape of the disciplinary hearing. According to the affidavit of defendant Angela Hardin, who is currently the Administrative Coordinator in the Inmate Grievance Branch in Columbia but was previously the Inmate Grievance Coordinator at Kershaw Correctional Institution ("KCI"), she has reviewed this matter and determined that the plaintiff did initially request to listen to the disciplinary hearing tape prior to filing his step one grievance appealing his conviction. She stated she instructed the plaintiff to submit a request along with his step one grievance as is required in SCDC policy. The plaintiff subsequently filed a step one grievance and on September 18, 2008, filed another request to listen to the tape. Ms. Hardin stated she responded to the plaintiff's request stating he would be allowed to listen to the tape, but due to a clerical error on her part his request was filed instead of being put with his pending grievance. The plaintiff sent two additional requests to listen to the disciplinary hearing tape, but Ms. Hardin stated as she had inadvertently filed his prior request instead of attaching to his grievance, she denied these requests, and the plaintiff was not allowed to listen to the

disciplinary hearing tape. She stated there was no improper motive on her part, but instead this was simply an error (Hardin aff. ¶¶ 20-21).

As discussed above, a prison official's alleged failure to comply with the state's grievance procedure is not actionable under Section 1983. In addition, as argued by the defendants, the only evidence before the court is that Ms. Hardin inadvertently did not file the plaintiff's request with his grievance, which led to the denial of his subsequent requests to listen to the tape. At most, Ms. Hardin's actions were merely negligent, which fails to state a constitutional claim. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Accordingly, this claim fails.

***Exhibitionism and Public Masturbation Charge and Conviction***

On August 23, 2008, the plaintiff was charged with Exhibitionism and Public Masturbation by defendant Corporal Brenda Lippe at KCI. A disciplinary hearing was held on September 4, 2008, and the plaintiff was convicted of the charge. The plaintiff alleges the claim was improper and that certain defendants failed to act properly as supervisors, failed to make sure the charge went through the proper "chain of command," and failed to attempt to informally resolve the charge. The plaintiff further argues that he was improperly convicted, complaining that he was not provided a Counsel Substitute and his request was not granted to present medical personnel as witnesses to the fact that he had been given medication that he was required to apply to his private area.

The plaintiff's claims are barred by the doctrines of res judicata and/or collateral estoppel. The court has previously considered and dismissed the plaintiff's allegations on this issue. The plaintiff, in his complaint in *McKinnedy v. Reynolds*, C.A. No. 6:08-3169-HMH-WMC, argued that he had been wrongly convicted of Exhibitionism and Public Masturbation on September 4, 2008.[1] This issue was specifically addressed in the

---

[1] The Report and Recommendation in that case improperly listed the year of the charge and conviction as 2006 rather than 2008.

Report and Recommendation that was subsequently adopted by Order of the Honorable Henry M. Herlong, Jr., Senior United States District Judge, dated February 4, 2010. The court specifically stated "[t]o the extent the plaintiff is attacking his disciplinary conviction, his claim fails. . . .  Here, there was clearly evidence to support the Disciplinary Hearing Officer's finding that the plaintiff was guilty of Exhibitionism and Public Masturbation" (C.A. No. 6:08-3169-HMH-WMC, 1/7/10 R&R at p. 15).

The doctrine of collateral estoppel, or issue preclusion, has been described by the South Carolina Court of Appeals as follows:

> [O]nce a judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit is precluded as to the parties and their privies in a subsequent action upon a different claim. Collateral estoppel bars relitigation of the same facts or issues necessarily determined in a former proceeding. When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Bell v. Bennett*, 414 S.E.2d 786, 790 (S.C. Ct. App. 1992) (internal citations omitted). The Court of Appeals has stated that "[r]es judicata bars not only issues litigated in a prior action, but issues that could have been litigated." *Plum Creek Dev. Co., Inc. v. City of Conway*, 491 S.E.2d 692, 695 (S.C. Ct. App. 1997), *aff'd as modified by* 512 S.E.2d 106 (S.C. 1999); *see also Jimmy Martin Realty Group, Inc. v. Fameco Dist.*, 386 S.E.2d 803 (S.C. Ct. App. 1989).

Based upon the foregoing the plaintiff's claims concerning the charge and his disciplinary conviction for Exhibitionism and Public Masturbation are barred the doctrines of res judicata and/or collateral estoppel.

Furthermore, the disciplinary conviction has not been expunged, overruled, reversed on direct appeal, or otherwise declared invalid (*see* Sellars aff. ¶ 10). Accordingly, such claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that "in

5

order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."). *See also Edwards v. Balisok*, 520 US. 641 (1997) (extending *Heck* to prison disciplinary hearings). Based upon the foregoing, this claim fails.

### *Pink Jumpsuit*

As the plaintiff was found guilty of Exhibitionism and Public Masturbation, he was required to be placed in a pink jumpsuit for 90 days (Sellars aff. ¶ 8). The plaintiff complains that he spent 98 days in a pink jumpsuit rather than 90, and thus his constitutional rights were violated. The plaintiff's claim fails. The defendants named with regard to this claim have testified that they had no control over how long the plaintiff was required to wear the pink jumpsuit (*see* Pittman, Long, Sellars, Hough, Hardin, Ford, Mackey, McKay, Seward, Tony Smith, Washington affs.). Furthermore, Major Darren Seward testified in his affidavit that if the plaintiff was placed in the Special Management Unit ("SMU"), this time would not count toward the 90 days he was required to wear the pink jumpsuit (Seward aff. ¶ 7). Accordingly, this may account for any extra days. Other than his unsubstantiated allegations, the plaintiff has failed to show that he spent longer than required in a pink jumpsuit, and he has further failed to show that any of the defendants were responsible if this occurred. Accordingly, this claim fails.

The plaintiff also complains in his complaint that his custody level changed after he was convicted of Exhibitionism and Public Masturbation and that he was placed in a dorm with other inmates required to wear pink jumpsuits. Christine Long, the Classification Case Manager at KCI, stated in her affidavit that all inmates at KCI who are required to wear a pink jumpsuit are housed in one dorm. Ms. Long stated if an inmate

receives a Level I or Level II disciplinary conviction, he will then come before the Institutional Classification Committee ("ICC") to evaluate his custody level. She stated that the inmate's caseworker, a non-security employee, and a security employee are members the ICC Board. When the plaintiff was convicted of Exhibitionism and Public Masturbation, the ICC changed his custody level from MI2 (Minimum In) to ME2 (Medium In). When his custody level changed from MI2 to ME2, this impacted where he could be housed in KCI, because as stated above all inmates who are placed in a pink jumpsuit are required to be housed in the same dorm (Long aff. ¶¶ 7-8).

Ms. Long stated the other main differences between MI2 and ME2 are restrictions on the amount the inmate can spend at the canteen, restrictions on what jobs the inmate can hold, and it can affect the amount of earned work credits the inmate can earn. In the plaintiff's situation, he is indigent and had no money to spend in the canteen; therefore, this restriction would have had no impact on the plaintiff. In addition, the plaintiff is required to serve 85% of his sentence, and the limitation on earned work credits also would have no impact. Finally, the restriction concerning the type of job had no impact on the plaintiff as he was a dorm worker both before and after being placed in a pink jumpsuit. Therefore, these restrictions did not have any impact on the plaintiff. Ms. Long stated that once the plaintiff completed his time in the pink jumpsuit, he came back before the ICC, and his custody level was returned to MI2 (Long aff. ¶ 10).

The plaintiff has failed to state a constitutional violation on this issue. The law is clear that inmates have no right to remain at particular classification or in a particular section of a prison. *See Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). Based upon the foregoing, this claim fails.

***Sentence Calculation***

The plaintiff next claims that his sentence has been calculated improperly and that a number of the defendants are responsible because they have "enhanced his

7

sentence." The plaintiff states that he was sentenced in 1990 for Distribution or Manufacturing Crack Cocaine, second offense, and that he is improperly being required to serve 85% of his sentence. The plaintiff claims that defendants Baker, Cannon, Hughes, Long, Patterson, Pittman, Rowe, Scarborough, and Willis are liable because his sentence has been allegedly improperly calculated. The defendants have attached to their motion for summary judgment affidavits from each of the above individuals, except Mr. Hughes. As to Mr. Hughes, as stated in the affidavit of Pamela Vaughan, Supervisor of Employee Records, he is no longer employed by SCDC and has not been employed by SCDC since August 31, 2001 (Vaughan aff. ¶4). Ms. Long, Mr. Pittman, Mr. Patterson, Ms. Scarborough, and Ms. Cannon each stated in their affidavits that they are not involved in the process of calculating inmate sentences or entering information concerning inmate sentences into the SCDC database (Long, Pittman, Patterson, Scarborough, Cannon affs.).

Furthermore, Ms. Willis, the Assistant Division Director of the Inmate Records Office in Columbia, testified she had reviewed the plaintiff's records and determined that the plaintiff's sentence is correctly entered into the SCDC database, and according to his conviction, the plaintiff is required to serve 85% of his sentence. She further testified that SCDC employees have no discretion as to sentencing; they simply enter the inmate's sentence based on the information provided by the court (Willis aff. ¶ 8). Mr. Rowe, who worked previously as a Records Analyst III, calculating inmate sentences and entering the information into the SCDC database, testified that he reviewed the plaintiff's record and determined that the statute under which he was sentenced required that the plaintiff serve 85% of his sentence (Rowe aff. ¶ 5).

The foregoing claim is barred by the doctrines of res judicata and/or collateral estoppel because the issue raised by the plaintiff has been previously decided. In *McKennedy v. Faulkenberry*, C.A. No. 6:06-641-HMH-WMC, the plaintiff sought habeas corpus relief pursuant to 28 U.S.C. § 2254. He alleged that some of his Earned Work

Credits and his sentence changed to a no-parole sentence without notice, a hearing, and judicial review, which constituted an ex post facto and due process violation. Judge Herlong specifically found that the plaintiff was properly required to serve 85% of his sentence (C.A. No. 6:06-641-HMH-WMC, 2/17/07 Order at 7). Accordingly, this claim fails.

The plaintiff also named defendant Beverly Baker in this claim. He alleges that defendant Baker violated his constitutional rights when she mailed a motion to dismiss the plaintiff's appeal of one of his many grievances. Ms. Baker was an Administrative Assistant in the Office of General Counsel in Columbia. She stated she has no independent recollection of the plaintiff, but can state that at no time did she prepare a motion to dismiss an inmate's appeal to the Administrative Law Court. She stated it is possible that as part of her job as an Administrative Assistant in the Office of General Counsel that she filed documents, including motions to dismiss, with the Administrative Law Court for attorneys in the Office of General Counsel. She stated that at no time during her employment in the Office of General Counsel did she draft or sign motions to dismiss, and she is not aware of any type of violation of the plaintiff's constitutional rights (Baker aff. ¶¶ 1-4). Clearly, the plaintiff fails to state any type of constitutional violation as to Ms. Baker, and any claim against her should be dismissed.

***Sexual Harassment***

The plaintiff next claims that Lt. Thompson made inappropriate comments to him, including calling him a "jacker." Assuming for purposes of this motion that Lt. Thompson made such comments, the plaintiff's claims fail to state a constitutional violation. *See Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (noting that "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.").

*Ramadan*

The plaintiff next alleges that he was not allowed to participate in the final day of the Ramadan feast. The plaintiff has sued numerous defendants in relation to this claim. Chaplain Potoka is the chaplain at KCI while Chaplains Shaheed and Mutakabhir are Muslim chaplains for SCDC. Chaplain Potoka stated he is a Christian minister, but he facilitates services for inmates of all faiths. He stated that Ramadan is the holy month in the Muslim religion and lasts for 30 days. Muslims are not allowed to eat during daylight hours during this time and are provided a hot food tray before sun-up and again after sundown. Inmates must sign up to participate in the Ramadan fast. Chaplain Potoka stated that he would not have been present at KCI at that time of the morning and had no personal involvement concerning this matter. He, along with Chaplains Shaheed and Mutakabhir, stated that even if the plaintiff was not provided a food tray prior to sun-up on September 20, he could have elected not to eat any meals during daylight hours and still have participated in the Ramadan fast. Chaplain Potoka further stated that he was not aware of any other Muslim inmates who complained they were not allowed to participate in the Ramadan fast that day (Potoka aff. ¶¶ 4-5); Shaheed aff. ¶¶ 2-4 , Mutakabhir aff. ¶¶ 2-4).

The plaintiff also alleges that he was not allowed to attend the Eid feast at the conclusion of Ramadan. The chaplains stated that the Eid feast is an event of the Muslim community, which includes a meal, prayers, and study. Jumah is the main worship services for Muslims and may be attended by Muslims and non-Muslims. However, the Eid feast is a Muslim community event, unlike Jumah services or Ramadan, and may only be attended by Muslims who are part of the Muslim community. As a Muslim community event, there are certain requirements for attending the Eid feast. The Muslim chaplains meet with the Muslim community at KCI to determine the requirements for attendance at the Eid feast. One of the requirements in order for an inmate to attend the Eid feast is that the inmate

attend 75% of the Jumah services. They stated this procedure is in place so that inmates who have not participated in the prior religious services cannot simply come for the meal. The Eid feast is partially paid for by inmates and also by outside donations. There are similar requirements for other faiths (Potoka aff. ¶¶ 6-9; Shaheed aff. ¶¶ 5-8; Mutakabhir ¶¶ 5-8).

Chaplain Potoka stated the plaintiff informed him on multiple occasions that he did not consider himself part of the Muslim community at KCI, and as such, he was not subject to the requirements of the Muslim community. Chaplain Potoka stated that he understood the plaintiff did not meet the requirements to participate in the Eid feast, and thus the plaintiff was not included in the Eid feast. Further, he would not have prevented the plaintiff from attending the Eid feast if it was shown that he had met the requirements. He also stated that the plaintiff would have been allowed to attend the Jumah services or Eid feast even if he was wearing a pink jumpsuit (Potoka aff. ¶¶ 10-11; *see also* Shaheed aff. ¶¶ 9-11; Mutakabhir aff. ¶¶ 9-11).

Inmates "clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). However, the United States Supreme Court has held that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). In assessing the constitutionality of a prison policy or regulation, the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The burden of proof under the *Turner* analysis is not on the governmental entity; the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton*, 539 U.S. at 132.

11

Additionally, "[t]he Supreme Court held in *Smith* that a neutral, generally applicable law does not offend the free exercise clause, even if the law has an incidental effect on religious practice." *Hines v. S.C.D.C.*, 148 F.3d 353, 357 (4th Cir. 1998) (citing *Employment Division, Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990)). The court in *Hines* defined a religiously neutral law as one that "proscribes conduct without regard to whether that conduct is religiously motivated or not. If the law makes no distinction between action based on religious conviction and action based on secular views, it is a generally applicable law, neutral toward religion and not violative of the First Amendment." *Id.* Neutral and uniform application of prison rules and regulations that have an incidental effect on religious practices does not violate the First Amendment. *Woods v. Evatt*, 876 F.Supp. 756, 763 (D.S.C. 1995).

The plaintiff's claim that he was not allowed to participate in the final day of the Ramadan fast fails as there was a legitimate penological reason for this. Captain Harrison Smith stated that on the afternoon of September 19, 2009, several inmates from the Oak Unit of KCI stated to correctional officers to watch the roof of the Oak Unit. The officers contacted the control room who set the camera to view the roof of the Oak Unit. While monitoring the cameras, officers observed two inmates jump down from the roof of the Oak Unit. The inmates were apprehended and movement was suspended in KCI in order to complete an institutional count and for investigation into this matter. Movement may have been suspended for a longer period of time in the Oak Unit, the unit in which the plaintiff was housed, because this is where the actual incident occurred. It is possible that the plaintiff was not allowed to take part in the last day of the Ramadan fast due to these security concerns, but it was imperative to make sure that all inmates were accounted for and also to investigate this matter. Captain Smith stated there was no intent to interfere with the plaintiff's exercise of his religion, but movement was suspended for legitimate

12

security concerns. He also stated he does not recall any other Muslim inmates complaining concerning Ramadan (Harrison Smith aff. ¶ 7).

As argued by the defendants, clearly there was a legitimate reason the plaintiff was not allowed to participate on the final morning of the Ramadan fast. As there had been what appeared to be an escape attempt, it was essential to make sure that all inmates were accounted for and to investigate the matter. In addition, as stated by the chaplains in their affidavits, even if the plaintiff was not provided a food tray prior to sun up on September 20, he could have elected not to eat any meals during daylight hours and still have participated in the Ramadan fast. Accordingly, this claim fails.

The plaintiff also fails to state a claim with regard to his allegation that he was not allowed to attend the Eid feast. As shown above, the plaintiff did not meet the requirements for attending the Eid feast and for this reason was not allowed to attend. The plaintiff claims that he did attend 75% of the Jumah services. However, attendance at the Jumah services was but one requirement for attendance at the Eid feast. Chaplain Potoka stated he understood the plaintiff did not meet the requirements to attend the Eid feast, and there was no intentional deprivation on his part. Mere negligence fails to state a claim under Section 1983. See *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Based upon the foregoing, this claim fails.

***Sgt. Clark***

The plaintiff claims that Sgt. James Clark threatened him with a disciplinary action for exercising his right to redress the government. Sgt. Clark stated though he does not recall the date, he remembers an occasion where the plaintiff complained about Officer Lowery. He does not recall the substance of the plaintiff's complaints concerning Officer Lowery and stated that Officer Lowery did not "confess" or state he committed any improper actions toward the plaintiff in his presence. Sgt. Clark stated the plaintiff complained continually about almost all officers working in the unit, and he does not recall any of the

13

plaintiff's complaints having any merit. Sgt. Clark stated that he said to the plaintiff that every time he placed a different officer in the unit, the plaintiff would immediately have complaints about this officer.  He informed the plaintiff that if he continued to make unfounded complaints about officers that he would charge him with Interfering with Daily Operations.  Sgt. Clark stated he did not recall placing a disciplinary charge against the plaintiff at that time and did not see any indication in the plaintiff's records of any charge of this nature against the plaintiff.  Sgt. Clark further stated that though the plaintiff continued to make unfounded complaints against officers, he never charged the plaintiff with Interfering with Daily Operations (Clark aff. ¶¶ 4-5).

The plaintiff fails to state a claim on this issue.  As argued by the defendants, the plaintiff does not allege that Sgt. Clark placed a disciplinary charge against him, and Sgt. Clark confirmed that this did not occur.  As no charges were made against the plaintiff, he suffered no harm.  Accordingly, there is no constitutional deprivation, and his claim should be dismissed as a matter of law.

*Qualified Immunity*

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

*Respondeat Superior*

To the extent he attempts to hold any of the defendants liable in their supervisory capacities, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977).  The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in

conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here with regard to any defendant.

### *Eleventh Amendment Immunity*

To the extent the defendants are sued in their official capacities, they correctly assert that they are immune from suit in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e).

### *State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. See 28 U.S.C. § 1367(c) (3).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted (doc. 90). Should the district court adopt this court's recommendation, any pending nondispositive motions will be rendered moot.

IT IS SO RECOMMENDED.


January 30, 2012                                         s/ Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge